```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ------------------------------------x
 3  UNITED STATES OF AMERICA,

 4
                                  23 CR 150-2 (PMH)
 5       -vs-
                                       PLEA
 6
    EFRAIN FERNANDEZ,
 7
                           Defendant.
 8
    ------------------------------------x
 9
                                  United States Courthouse
10                                White Plains, New York

11                                March 28, 2023

12  Before, THE HONORABLE PHILIP M. HALPERN, District Judge

13
    A P P E A R A N C E S:
14
    DAMIAN WILLIAMS
15       United States Attorney for the
         Southern District of New York
16  BY:  KATHRYN WHEELOCK
         BENJAMIN KLEIN
17       Assistant United States Attorneys

18
    LAW OFFICE OF MATTHEW GALLUZZO, PLLC
19  BY:  MATTHEW GALLUZZO
         Attorney for Defendant
20
    ALSO PRESENT:
21
    Peter Anderson - Court Interpreter (Spanish)
22

23

24

25
```

032823.2                        Proceedings

1           THE DEPUTY CLERK:  United States of America against

2 Efrain Fernandez.

3           Would the government please note your appearance?

4           MS. WHEELOCK:  Good afternoon, Your Honor.  Kate

5 Wheelock and Ben Klein for the United States.

6           THE DEPUTY CLERK:  Defense counsel, please note your

7 appearance.

8           MR. GALLUZZO:  Good afternoon, Your Honor.  Matthew

9 Galluzzo for the defendant, Efrain Fernandez.

10           THE DEPUTY CLERK:  Would the staff interpreter please

11 note your appearance?

12           THE INTERPRETER:  Yes.  Good afternoon, Your Honor.

13 Peter Anderson, staff interpreter.

14           THE COURT:  All right.  Counsel, Mr. Anderson,

15 Mr. Fernandez.  Good afternoon.  Please be seated.

16           THE DEFENDANT:  Good afternoon.

17           THE COURT:  All right.  I am going to sign a written

18 order pursuant to Federal Rule of Criminal Procedure 5(f) dated

19 today.  Mr. Cangelosi will give this to you now.

20           Has the government received its verbal warning as of

21 yet?

22           MS. WHEELOCK:  Yes.  We received it at the plea of the

23 defendant's co-defendant.

24           THE COURT:  Okay.  Terrific.

25           Mr. Galluzzo, do I understand correctly that at the

1  appropriate moment your client is prepared to enter a plea to

2  the lesser-included charge contained in Count One of the

3  Information?

4          MR. GALLUZZO:  Yes, Your Honor.  That's correct.

5          THE COURT:  All right.  So we will first do the Waiver

6  of Indictment.

7          Have you given a copy of the Information to your

8  client, Mr. Galluzzo?  Has it been translated for him?

9          MR. GALLUZZO:  Yes, Your Honor.

10         THE COURT:  All right.  Did you explain to

11 Mr. Fernandez the charge contained in Count One against him?

12         MR. GALLUZZO:  I have, Your Honor.

13         THE COURT:  Mr. Fernandez, the document that contains

14 the charge to which you have indicated you wish to plead guilty

15 is called an information and has been issued by the United

16 States attorney.  Have you received a copy of the Information?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Has it been read or translated to you and

19 for you?

20         THE DEFENDANT:  Yes.  It was read to me, and it was

21 translated for me.

22         THE COURT:  All right.  Did you discuss the charge

23 contained in the Information with your attorney?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Because the crime charged in the

1  Information is a felony, you have a constitutional right to

2  require the government to present evidence to a grand jury to

3  see whether the grand jury would vote to charge you with that

4  crime.  Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  The grand jury is a group of at least 16,

7  but not more than 23, citizens.  Before you could be indicted,

8  at least 12 of them would have to agree that there was probable

9  cause to believe that you -- a crime was committed and that you

10 committed that crime.  Do you understand that?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  If the grand jury voted to charge you, the

13 document they would issue would be called an indictment.  Do you

14 understand that?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Do you wish to give up your right to have

17 your case presented to the grand jury?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Did you discuss that decision with your

20 attorney?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  I have been given a Waiver of Indictment

23 form that appears to have your signature above the typed words

24 "Efrain Fernandez, defendant."  Is that your signature on the

25 Waiver of Indictment?

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  I also notice your attorney, Mr. Galluzzo,

3  signed on your behalf.  Did you ask him to sign on your behalf

4  as well?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Before you signed the Waiver of

7  Indictment, did you discuss it with your attorney?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Did you sign the waiver voluntarily?

10             THE DEFENDANT:  Voluntarily, freely.

11             THE COURT:  Is he asking me a question or is that his

12  answer?

13             THE INTERPRETER:  No, Your Honor.  He said "freely and

14  voluntarily."

15             THE COURT:  Okay.  When you signed the waiver, did you

16  understand you were giving up your right to be indicted by a

17  grand jury?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Did anyone threaten you or force you to

20  give up that right?

21             THE DEFENDANT:  No.

22             THE COURT:  All right.  Mr. Cangelosi, we will make

23  the Waiver of Indictment Court Exhibit 1.

24             I find that Mr. Fernandez has knowingly and

25  voluntarily waived his right to be indicted by a grand jury.

1  The Information will be accepted for filing.

2          Now, Mr. Galluzzo, we are going to arraign first on

3  the not-guilty plea, and then you will make an application.  All

4  right?

5          MR. GALLUZZO:  That's fine.

6          THE COURT:  Mr. Fernandez, you have already indicated

7  to me that you received a copy of the Information we have been

8  discussing and read it and reviewed it with your attorney; is

9  that correct?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you waive the public reading of the

12  Information or do you want me to read it to you?

13          THE DEFENDANT:  I do waive it.

14          THE COURT:  Mr. Fernandez, as to the charge in the

15  Information, how do you plead at this juncture, guilty or not

16  guilty?

17          (Pause)

18          MR. GALLUZZO:  I am sorry, Your Honor.  I am just

19  explaining this procedure that we are going to be doing.  On his

20  behalf, I will enter a not guilty plea at this stage with the

21  understanding that there will be a guilty plea to ensue.

22          THE COURT:  Is that your wish, Mr. Fernandez?

23          THE DEFENDANT:  Yes.

24          THE COURT:  All right.  The clerk will then enter a

25  guilty plea.

1          Now, Mr. Galluzzo -- and I guess we have to figure out

2    how do this better some day, but not today.

3          MR. GALLUZZO:  All right.

4          THE COURT:  Mr. Galluzzo, does your client have an

5    application?

6          MR. GALLUZZO:  Yes, Your Honor.  My client does wish

7    to enter a plea of guilty today pursuant to a plea agreement

8    that has been previously signed and delivered to the Court.

9          THE COURT:  Mr. Fernandez, as you heard, I have been

10   informed that you wish to plead guilty to the one-count

11   Information; is that correct?

12         THE DEFENDANT:  Yes.

13         THE COURT:  With respect to Count One, I understand

14   that you intend to plead guilty to the lesser-included offense

15   of conspiracy to distribute and possess with intent to

16   distribute five grams and more of methamphetamine, its salts,

17   isomers, and salts of its isomers, and 40 grams and more of

18   mixtures and substances containing a detectable amount of

19   fentanyl in violation of Title 21, United States Code,

20   Section 841(b)(1)(B).

21         Before I can accept your guilty plea, I need to ask

22   you certain questions.  It's very important to me that you

23   answer these questions honestly and completely.  I'm doing this

24   so I can make sure you understand your rights.  I also want to

25   make sure you understand -- I want to make sure -- let me start

1   over.

2          I want to make sure that you are pleading guilty

3   voluntarily and of your own free will and that you are pleading

4   guilty because, in fact, you are guilty and not for some other

5   reason, and that you fully understand the consequences of your

6   plea.

7          If at any point you don't understand my questions or

8   you want to speak to your attorney, please say so because it's

9   very important to me that you understand each and every question

10  before you answer it.  Will you do that, please?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  All right.  At this time I am going to ask

13  Mr. Cangelosi to place you under oath.

14         (Defendant, Efrain Fernandez, sworn)

15         THE DEFENDANT:  Yes, sir.

16         THE DEPUTY CLERK:  Please be seated.

17         THE COURT:  Mr. Fernandez, you are now under oath,

18  which means that if you answer any of my questions falsely, you

19  could later be prosecuted for perjury or for making a false

20  statement.  Do you understand that?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Tell me your full name, please.

23         THE DEFENDANT:  Efrain Fernandez Hernandez.

24         THE COURT:  How old are you?

25         THE DEFENDANT:  I am 48.

032823.2                          Proceedings

```
 1              THE COURT:  How far did you go in school?

 2              THE DEFENDANT:  Preparatory school.

 3              THE COURT:  And where did you go?

 4              THE DEFENDANT:  In Mexico.

 5              THE COURT:  Are you currently, or have you recently

 6  been, under the care of a doctor or psychiatrist for any reason?

 7              THE DEFENDANT:  No.

 8              THE COURT:  Have you ever been treated or hospitalized

 9  for any mental illness or mental health problems?

10              THE DEFENDANT:  No.

11              THE COURT:  Have you ever been treated or hospitalized

12  for any drug or alcohol abuse or addiction?

13              THE DEFENDANT:  No.

14              THE COURT:  Have you taken any drugs, medicine or

15  pills in the last 24 hours?

16              THE DEFENDANT:  No.

17              THE COURT:  Have you consumed any alcohol in the last

18  24 hours?

19              THE DEFENDANT:  No.

20              THE COURT:  Is your mind clear today?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Do you understand what's happening here

23  today, Mr. Fernandez?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Have you had enough time and opportunity
```

1  to discuss your case with your attorney?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Have you discussed with him the charges

4  against you, including any possible defenses that you might

5  have?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Have you discussed with him the

8  consequences of entering a plea of guilty?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Are you satisfied with your attorney's

11 representation of you?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Counsel, do either of you have any doubt

14 as to Mr. Fernandez's competence to enter a guilty plea at this

15 time?  Ms. Wheelock?

16         MS. WHEELOCK:  No, Your Honor.

17         THE COURT:  Mr. Galluzzo?

18         MR. GALLUZZO:  No, I have not.

19         THE COURT:  Based on the defendant's responses to my

20 questions, and my observations of his demeanor, I find that he

21 is fully competent to enter an informed guilty plea at this

22 time.

23         Mr. Fernandez, I am now going to explain to you

24 certain rights that you have under the Constitution and the laws

25 of the United States.  These are the rights you will be giving

1   up if you enter a plea of guilty.  Again, please tell me if

2   there is anything at all you don't understand, and either I or

3   your attorney will explain the matter more fully.

4           You have the right to plead not guilty to the charge

5   contained in this Information or persist in your previously

6   entered plea of not guilty.  Do you understand that right?

7           THE DEFENDANT:  Yes.

8           THE COURT:  If you plead not guilty, you have the

9   right to a speedy and public trial by an impartial jury on the

10  charge contained in the Information.  Do you understand that

11  right?

12          THE DEFENDANT:  Yes.

13          THE COURT:  At that trial, you would be presumed to be

14  innocent, and the government would be required to prove you

15  guilty by competent evidence beyond a reasonable doubt before

16  you could be found guilty.  That means you would not have to

17  prove that you were innocent.  Do you understand that right?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  If there were a jury trial, you could not

20  be convicted unless a jury of 12 people unanimously agreed that

21  you were guilty beyond a reasonable doubt.  Do you understand

22  that right?

23          THE DEFENDANT:  Yes.

24          THE COURT:  At that trial, and at every other stage of

25  the case, you would have the right to be represented by an

1   attorney, and if you could not afford an attorney, the Court

2   would appoint an attorney to represent you.  Do you understand

3   that right?

4              THE DEFENDANT:  Yes.

5              THE COURT:  During a trial, the witnesses for the

6   government would have to come to court and testify in your

7   presence, and your lawyer could confront and cross-examine those

8   witnesses, and object to evidence offered by the government.  Do

9   you understand all of that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  At a trial, your lawyer could also offer

12  evidence on your behalf, and you would have the right to use

13  subpoenae to compel witnesses to testify, and to obtain evidence

14  to be offered in your defense.  Do you understand that right?

15             THE DEFENDANT:  Yes.

16             THE COURT:  At a trial, you would have the right to

17  testify if you chose to do so, but you would also have the right

18  not to testify.  If you chose not to testify, that could not be

19  used against you in any way.  No inference or suggestion of

20  guilt could be drawn from the fact that you did not testify.  Do

21  you understand all of that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  If you were convicted at a trial, you

24  would have the right to appeal that verdict to a higher court.

25  Do you understand that right?

1                 THE DEFENDANT:  Yes.

2                 THE COURT:  And do you also understand that even now

3     you have the right to change your mind, persist in your not-

4     guilty plea, and go to trial?

5                 THE DEFENDANT:  Yes.

6                 THE COURT:  But if you do plead guilty, and if I

7     accept your plea, you will be giving up your right to a trial

8     and all the other rights that go with it that I have just

9     described other than your right to an attorney.  If you plead

10    guilty, there will be no trial, and I will enter a judgment of

11    guilty and sentence you on the basis of your guilty plea after

12    considering a presentence report prepared by the Probation

13    Department and after considering any submissions I get from you,

14    your attorney, and the government.  Do you understand all of

15    that?

16                THE DEFENDANT:  Yes.

17                THE COURT:  Finally, if you do plead guilty, you will

18    be giving up your right not to incriminate yourself, and I am

19    going to ask you some questions this afternoon about what you

20    did in order to satisfy myself that you are, in fact, guilty as

21    charged.  Do you understand that?

22                THE DEFENDANT:  Yes.

23                THE COURT:  Mr. Fernandez, do you understand that the

24    government is willing to accept a guilty plea from you to the

25    lesser-included offense of conspiracy to distribute and possess

1  with intent to distribute five grams and more of

2  methamphetamine, its salts, isomers, and salts of its isomers,

3  and 40 grams and more of mixtures and substances containing a

4  detectable amount of fentanyl in violation of 21 United States

5  Code 841(b)(1)(B)?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Ms. Wheelock, what are the essential

8  elements of the lesser-included offense charged in Count One of

9  the Information?

10             MS. WHEELOCK:  Your Honor, the elements of the 18

11 U.S.C. 841(b)(1)(B) conspiracy are:  First, that two or more

12 persons agreed to violate the federal drug laws; second, that

13 the defendant knowingly and voluntarily entered into the

14 conspiracy; and third, that the objective of the conspiracy was

15 to distribute five grams and more of methamphetamine, its salts,

16 isomers, and salts of its isomers, and 40 grams and more of

17 mixtures and substances containing a detectable amount of

18 fentanyl.

19             THE COURT:  Thank you, Ms. Wheelock.

20             Mr. Fernandez, do you understand that if you did not

21 plead guilty to the lesser-included offense in Count One of the

22 Information, that the government would have to prove each and

23 every element of that charge as described by Assistant United

24 States Attorney Wheelock beyond a reasonable doubt and at a

25 trial?

1           THE DEFENDANT:  Yes.

2           THE COURT:  I am now going to tell you about the

3  maximum possible penalty for this offense.

4           As to the lesser-included offense in Count One, the

5  maximum possible penalty is a term of imprisonment of 40 years,

6  followed by a lifetime term of supervised release, plus a

7  maximum fine of the greatest of $5 million, or twice the gross

8  pecuniary gain derived from the offense, or twice the gross

9  pecuniary loss to a person other than yourself resulting from

10 the offense, plus a mandatory special assessment of $100.

11          Do you understand that these are the maximum possible

12 penalties for this offense?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you further understand that the crime

15 to which you are pleading guilty not only has a maximum penalty,

16 but also carries a mandatory minimum term of imprisonment and a

17 mandatory minimum term of supervised release?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Specifically, the lesser-included offense

20 in Count One carries a mandatory minimum term of five years of

21 imprisonment and four years of supervised release.  That means

22 that even if I wanted to, I would not be allowed to sentence you

23 to less than the mandatory minimum term of imprisonment and

24 supervised release.  Do you understand that?

25          THE DEFENDANT:  Yes.

1          THE COURT:  In this case, even though there is a

2  mandatory minimum term of a sentence of five years'

3  imprisonment, you could be sentenced below the mandatory minimum

4  under the so-called Safety Valve statute if you comply with

5  certain conditions.  You are eligible for that kind of treatment

6  only if certain facts apply to your case.  It's up to me to

7  decide whether they do apply, and I can't make a decision about

8  that until the time of your sentence.  Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Also, as part of your sentence, I can

11  order you to pay restitution to any person or entity injured as

12  a direct result of your criminal conduct.  Do you understand

13  that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Ms. Wheelock, I see there is a restitution

16  element in the plea agreement.  Is the government going to

17  pursue it?

18          MS. WHEELOCK:  Your Honor, we don't expect to pursue

19  restitution.

20          THE COURT:  All right.  Mr. Fernandez, I mentioned

21  supervised release a moment ago.  Supervised release means that

22  if I sentence you to prison to be followed by a term of

23  supervised release, you will be subject to supervision by the

24  Probation Department after your release.  If you violated any of

25  the conditions of supervised release, the term of supervised

 1 release could be revoked, and you could be returned to prison

 2 without a jury trial to serve additional time even beyond your

 3 original sentence.  If that happened, you would not be given

 4 credit for the time served in prison on your original sentence

 5 or for any time spent on supervised release.  Do you understand

 6 all of that?

 7            THE DEFENDANT:  Yes, sir.

 8            THE COURT:  You should also understand that parole has

 9 been abolished in the federal system, so that you are sentenced

10 to prison, you will not be released early on parole.  Do you

11 understand that?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Mr. Fernandez, are you a citizen of the

14 United States?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Do you further understand that if I accept

17 your guilty plea, and I adjudge you guilty, that adjudication

18 may deprive you of valuable civil rights such as:  The right to

19 vote, the right to hold public office, the right to serve on a

20 jury, the right to possess any kind of firearm, and the right to

21 hold certain professional licenses?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Have you talked to your attorney about how

24 the federal sentencing guidelines apply to your case,

25 Mr. Fernandez?

1          THE DEFENDANT:  Yes.

2          THE COURT:  In determining a sentence, I am required

3   to consider the guidelines, which are a set of rules and

4   recommendations for determining an appropriate sentence.  I have

5   to calculate the applicable guidelines range, consider that

6   range, and determine whether there should be an upward or

7   downward departure from that range.

8          In addition, I am required to consider the sentencing

9   factors set forth in Section 3553(a) of Title 18 of the United

10  States Code and to impose a sentence that I best believe

11  satisfies the purposes of the criminal law, even if that

12  sentence is higher or lower than what the guidelines recommend.

13  Do you understand all of that?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Do you also understand that I will not be

16  able to determine how the guidelines apply to your case until

17  after a presentence report has been prepared by the probation

18  office, and both you and the government have had the chance to

19  review, comment on, and object to anything in that report?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Do you also understand that if your

22  attorney or anyone else has attempted to predict what your

23  sentence will be, that prediction could be wrong?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  I am telling you this because you need to

1  understand that no one, not your attorney, not the government's

2  attorney, can be sure right now what your sentence will be.

3  It's my job to decide what your sentence will be, and I'm not

4  going to do that right now.  Instead, I am going to wait until

5  after the presentence report is completed, and I have ruled on

6  any challenges to the report, calculated the guidelines range,

7  determined whether there are any grounds to depart from that

8  range, and considered the Section 3553(a) factors.  So at this

9  point, nobody can predict what the sentence will be in your

10 case.  Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Do you also understand that even if your

13 sentence is different from what your attorney or anyone else

14 told you it might be, or if it's different from what you expect

15 it to be, or from what's contained in your plea agreement, once

16 you have pled guilty, I will not let you withdraw your guilty

17 plea?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Mr. Fernandez, has anyone threatened you

20 or coerced you in any way or tried to force you to plead guilty?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  Has anyone other than the prosecutor

23 promised you anything or offered you anything in order to get

24 you to plead guilty?

25          THE DEFENDANT:  No.

1          THE COURT:  I have been given a letter dated

2    February 2, 2023, from the government's attorney to your

3    attorney, which is a plea agreement between you and the

4    government.  Mr. Cangelosi, we will mark the original of the

5    plea agreement Court Exhibit 2.

6          I want to verify the signatures on page 7,

7    Mr. Fernandez.  Below the typed words "agreed and consented to"

8    and above the typed words "Efrain Fernandez," there is a

9    signature.  Is that your signature?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  I also see that you asked your attorney to

12   sign on your behalf.  Did you authorize Mr. Galluzzo to sign on

13   your behalf?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  And did you see the Spanish language

16   interpreter, Mr. Anderson, sign as well in connection with this

17   plea?

18         THE INTERPRETER:  May I say something, Your Honor?

19         THE COURT:  Sure.

20         THE INTERPRETER:  I did not translate the plea

21   agreement for the defendant.

22         THE COURT:  Oh, okay.  Do you know who did?

23         MR. GALLUZZO:  Yes.  As a point of fact, Your Honor,

24   that was a court-approved Spanish interpreter.  His name is Jose

25   Carlos Venant.

Proceedings

1          THE COURT:  Did you see Mr. Venant sign as the

2   interpreter?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And did he, in fact, interpret the plea

5   agreement for you?

6          THE DEFENDANT:  Perfectly well.

7          THE COURT:  Did you read or did you go through this

8   agreement before you signed it?

9          THE DEFENDANT:  Yes.  He translated it for me.

10         THE COURT:  All right.

11         MR. GALLUZZO:  To be clear, Your Honor, a word-for-

12  word Spanish translation was written of this agreement, and so

13  he has received a copy of that from this interpreter.  It was

14  also read to him in his presence in Spanish.

15         THE COURT:  Thank you.

16         So you received a translated copy of the plea

17  agreement, correct?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  And you read it and reviewed it in detail

20  before you signed it, correct?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Did you discuss it with your attorney

23  before you signed it?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Did you discuss every aspect of it with

1  your attorney?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Did you understand the agreement at the

4  time you signed it?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Is this plea agreement the entire

7  agreement between you and the government?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Is there any other agreement, promise or

10  understanding between you and the government that's been left

11  out of this agreement?

12          THE DEFENDANT:  No.

13          THE COURT:  Did anyone threaten or coerce you or force

14  you to enter into this plea agreement?

15          THE DEFENDANT:  No.

16          THE COURT:  Other than what's contained in the plea

17  agreement, has anyone promised you anything or offered you any

18  inducement to plead guilty or to enter into this plea agreement?

19          THE DEFENDANT:  No.

20          THE COURT:  Has anyone made a promise to you as to

21  what your sentence will be?

22          THE DEFENDANT:  No.

23          THE COURT:  It appears that you and the government

24  have stipulated to, meaning you agreed to, the appropriate

25  calculation of your sentencing range under the guidelines.  Is

1   that your understanding, Mr. Fernandez?

2              THE DEFENDANT:  Yes.

3              THE COURT:  According to the stipulation, your

4   guidelines range is 135 to 168 months of imprisonment.

5              Do you understand that the guidelines stipulation in

6   the plea agreement is binding on you, and it's binding on the

7   government, but it is not binding on me?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Do you also understand that regardless of

10  what you and the government have agreed to, I'm going to make my

11  own determination as to what your guidelines range is?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Do you also understand that under certain

14  circumstances both you and the government have the right to

15  appeal any sentence that I might impose subject, of course, to

16  the terms of the plea agreement?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  There appears to be what the lawyers call

19  an appeal waiver on pages 4 and 5 of the plea agreement.  That's

20  the English version.  Do you understand that under the plea

21  agreement, you are giving up your right to appeal or otherwise

22  challenge your sentence so long as I sentence you at or below

23  the stipulated guidelines range of 135 to 168 months of

24  imprisonment?

25             THE DEFENDANT:  Yes.

1              THE COURT:  Ms. Wheelock, is there going to be a civil

2  forfeiture here in connection with this plea?

3              MS. WHEELOCK:  Your Honor, we don't expect to pursue

4  forfeiture.

5              THE COURT:  But in any event, Mr. Fernandez, did you

6  discuss the forfeiture provision with your attorney?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you admit the forfeiture allegations

9  with respect to Count One of the Information and agree to

10 forfeit to the United States pursuant to Title 21, United States

11 Code, Section 853, a sum of money in an amount to be determined

12 representing proceeds traceable to the commission of the charge

13 in Count One of the indictment?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  You understand what forfeiture means,

16 right?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Forfeiture means you are giving something

19 up.  Under this section of the plea agreement, you are

20 consenting to give up a money judgment against you in an amount

21 to be determined, which represents the amount of proceeds

22 traceable to the offense.  Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  It's very possible in the future, while

25 the government has indicated they are not going to pursue

1   forfeiture, they still have a perfect right to between now and

2   sentencing.  So if they do, at an appropriate time you would be

3   signing and agreeing to a money judgment whereby judgment would

4   be entered against you in a certain amount?

5                THE DEFENDANT:  Yes, sir.

6                THE COURT:  Mr. Fernandez, have you clearly understood

7   everything that's happened here so far today?

8                THE DEFENDANT:  Yes.

9                THE COURT:  Now that you have been advised of the

10  charge against you, the possible penalties that you face, and

11  the rights you are giving up, is it still your intention to

12  plead guilty to the lesser-included offense in Count One of the

13  Information?

14               THE DEFENDANT:  Yes, sir.

15               THE COURT:  With respect to the lesser-included

16  offense in Count One of the Information, Mr. Fernandez, how to

17  you plead, guilty or not guilty?

18               THE DEFENDANT:  Guilty.

19               THE COURT:  Are you, in fact, guilty of that charge?

20               THE DEFENDANT:  Yes, sir.

21               THE COURT:  Are you pleading guilty voluntarily and of

22  your own free will?

23               THE DEFENDANT:  Yes, sir.

24               THE COURT:  Ms. Wheelock, would you kindly summarize

25  what the government would expect to prove if the matter went to

1  trial?

2          MS. WHEELOCK:  Yes.  If this case were to proceed to

3  trial, the government would prove beyond a reasonable doubt that

4  the defendant conspired with others to distribute five grams and

5  more of methamphetamine, its salts, isomers and salts of its

6  isomers, and 40 grams and more of mixtures and substances

7  containing a detectable amount of fentanyl.

8          The government's proof would include, among other

9  things:  Testimony from a confidential informant working with

10 the DEA about arranging to purchase a substantial quantity of

11 narcotics, including methamphetamine, and meeting the defendant

12 and a coconspirator at a farm in Pine Island to complete the

13 sale; recordings related to the transaction, including a

14 recording of the CI meeting the defendant's coconspirator to

15 purchase narcotics; law enforcement testimony regarding a search

16 of the truck during which they found the defendant standing next

17 to four cylinders wrapped in brown duct tape each containing

18 approximately one pound of methamphetamine; law enforcement

19 testimony regarding a search of the truck during which officers

20 recovered fake buy money given to the defendant's

21 coconspirators, and additional narcotics; physical evidence,

22 including narcotics the confidential informant purchased from

23 the defendant and recovered from his truck; and lab tests

24 showing that these narcotics were approximately 13 kilograms of

25 methamphetamine and approximately one kilogram of fentanyl.

1            THE COURT:  All right.  Thank you.

2            Mr. Galluzzo, there is no issue of venue here in the

3  Southern District of New York being met, and that's agreed to,

4  am I correct?

5            MR. GALLUZZO:  I don't believe there will be, Your

6  Honor.

7            THE COURT:  I am sorry.  I didn't hear.

8            MR. GALLUZZO:  I don't believe there is any issue as

9  to venue, no.

10           THE COURT:  Are you prepared to waive it now?

11           MR. GALLUZZO:  I am.

12           THE COURT:  All right.  Thank you.

13           Mr. Fernandez, did you hear what Assistant United

14  States Attorney Wheelock just said?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Is what she said substantially accurate?

17           THE DEFENDANT:  That's correct.

18           THE COURT:  All right.  Would you tell me now in your

19  own words what you did to make you believe that you are guilty

20  of this charge?

21           THE DEFENDANT:  So I made a bad decision by agreeing

22  to participate in driving a truck from California to New York

23  that had drugs in it, just like the prosecutor said, together

24  with another person hoping to make some easy money.

25           So because of my bad decisions, I find myself here.

1          THE COURT:  All right.  Let's just see if we can get a

2 little more precise.  The other individual you were with was

3 Mr. Munoz?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And you drove the truck with Mr. Munoz --

6          THE DEFENDANT:  Yes.

7          THE COURT:  -- in April of 2022 and in May of 2022?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And while you were driving your truck, you

10 knew there was methamphetamine, its salts, isomers, and salts of

11 its isomers in the truck, right?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  And you knew there were 40 grams or more

14 of fentanyl in that truck, right?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And on May 2nd you arrived at a farm here

17 in New York?

18          THE DEFENDANT:  Yes.

19          THE COURT:  With the truck?

20          THE DEFENDANT:  Yes.  That's correct.

21          THE COURT:  And the drugs in the truck?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And a buyer appeared and took the drugs

24 from you and Mr. Munoz and gave you a backpack full of money,

25 right?

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  And you put the money in the truck in one

3    of the drawers in the truck?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Compartments.  And you made a deal with

6    Mr. Munoz; you were going to make 10,000 bucks for this transfer

7    of the drugs, right?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  And you knew what you were doing; you

10   entered into that agreement with Mr. Munoz knowingly, right?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  And you knew you were going to distribute

13   illegal drugs, methamphetamine and fentanyl, right?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  And you knew the purpose of entering into

16   the deal with Mr. Munoz was to distribute illegal drugs?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  And while you were there, law enforcement

19   officers showed up, correct?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And you consented to allow the law

22   enforcement officers to search the truck?

23           THE DEFENDANT:  Yes, at all times.

24           THE COURT:  All right.  And when they searched the

25   truck, they found you standing next to these wrapped containers

1  containing more than a pound of methamphetamine, right?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And when you and Mr. Munoz accepted that

4  backpack full of money, you thought that was United States

5  currency that was being transferred to you in exchange for the

6  sale of these drugs to the confidential informant?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  At the time you were doing all of this,

9  Mr. Fernandez, you knew what you were doing was wrong, right?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  You knew it was against the law?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Did anyone threaten or force you to do any

14  of these things?

15         THE DEFENDANT:  No, sir.

16         THE COURT:  Counsel, are there any additional

17  questions you would like me to ask Mr. Fernandez?

18         Ms. Wheelock?

19         MS. WHEELOCK:  No.

20         THE COURT:  Mr. Galluzzo?

21         MR. GALLUZZO:  No.  Thank you, Your Honor.

22         THE COURT:  Ms. Wheelock, do you believe there is a

23  sufficient factual predicate for a guilty plea here?

24         MS. WHEELOCK:  Yes.

25         THE COURT:  Do you, Mr. Galluzzo, concur?

1          MR. GALLUZZO:  I do, Your Honor.

2          THE COURT:  Do you know of any defense, Mr. Galluzzo,

3   that would be valid that would prevail at trial or any reason

4   why your client should not be permitted to plead guilty at this

5   time?

6          MR. GALLUZZO:  No, Your Honor.

7          THE COURT:  Based on Mr. Fernandez's responses to my

8   questions, my observations of his demeanor, I find that he

9   understands his rights and is waiving them knowingly and

10  voluntarily with an understanding of the consequences of his

11  guilty plea, including the potential sentence that may be

12  imposed.

13         I further find that the guilty plea is voluntary and

14  did not result from force, threats or promises other than the

15  promises in the plea agreement; that Mr. Fernandez has admitted

16  he is guilty as charged of the lesser-included offense in Count

17  One of the Information, and that the plea is supported by an

18  independent factual basis for each and every element of the

19  crime charged.

20         Accordingly, I accept the guilty plea, and I adjudge

21  the defendant guilty on the charge of the lesser-included

22  offense in Count One of this Information.

23         I am going to direct that probation -- the Probation

24  Department conduct a presentence investigation and prepare a

25  presentence investigation report.

1          Mr. Fernandez, you are going to be interviewed by a

2    probation officer as part of that presentence investigation

3    process.  Your lawyer will be with you during that interview.

4    Please make certain that anything you say to the probation

5    officer is truthful and accurate, and the reason I say that is

6    the presentence report is very important to me in deciding what

7    sentence to impose on you.  So it's important that you read the

8    report -- or have it translated for you -- carefully and discuss

9    it with your attorney before your sentencing date.  If there are

10   any mistakes in the report, tell Mr. Galluzzo about them so that

11   he can bring them to my attention before I impose sentence.

12          Also, both you, and the government, and your lawyer

13   will have the right to speak on your behalf and against you

14   before I impose sentence.  I see we've pre-selected a date

15   subject to counsel's availability of August 29th at 3:00 p.m.

16   Does that work?

17          MS. WHEELOCK:  Yes, Your Honor.

18          (Pause)

19          THE COURT:  You can tell me you're going on vacation.

20          MR. GALLUZZO:  I am trying to figure out when I am

21   going on vacation.  I don't think that's a bad date for me, Your

22   Honor.  I think that's okay.

23          THE COURT:  Well, I am not inclined to move

24   sentencings because I have an enormous number of them --

25          MR. GALLUZZO:  That's why --

1            THE COURT:  -- of all of these cases I have, but if

2    for some reason, Mr. Galluzzo, you get back to the ranch and you

3    figure out that you have a preplanned something --

4            MR. GALLUZZO:  Right.

5            THE COURT:  -- you can write me, and I will consider

6    it.

7            MR. GALLUZZO:  All right.  I am sure my wife is going

8    to be mad at me, but I think that's okay for now.  So I will say

9    yes.

10           THE COURT:  You will get a chance with me if you have

11   a preplanned vacation.  I don't want your wife mad at you.

12           MR. GALLUZZO:  Thank you, Your Honor.

13           THE COURT:  And you can tell her I said that.

14           MR. GALLUZZO:  Okay.

15           THE COURT:  We will make it August 29th at 3:00 p.m.

16           MR. GALLUZZO:  All right.

17           THE COURT:  The deadline for any written submissions

18   is three weeks before that.  The government's response is due

19   two weeks before that.  And I ask in every case that counsel

20   address the 3553(a) factors sequentially, and if you have any

21   other arguments under the guidelines, to do that separately.

22   Okay?

23           MR. GALLUZZO:  I understand.

24           THE COURT:  All right.  Mr. Fernandez is remanded.

25           Is there anything else I can do for either of you

032823.2                          Proceedings

1  today?

2              MS. WHEELOCK:  No.

3              MR. GALLUZZO:  No.  Thank you, Your Honor.

4              THE COURT:  All right.  Take good care, Mr. Fernandez.

5              THE DEPUTY CLERK:  All rise.  Court is in recess.

6                          -o0o-

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25